UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TIMOTHY F. SULLIVAN,
  and
FRANKLIN EUGENE PERRY,

    Defendants.

Case No. 2:18-cr-027 (2) & (3)
CHIEF JUDGE EDMUND A. SARGUS, JR.

## OPINION AND ORDER

This matter is before the Court on Defendant Timothy F. Sullivan's ("Defendant Sullivan") Motion for Relief from Prejudicial Joinder (ECF No. 56), Defendant Franklin Eugene Perry's ("Defendant Perry") Motion for Relief from Prejudicial Joinder (ECF No. 57), and the Government's Consolidated Response in Opposition to Defendants' Motions (ECF No. 58). For the reasons that follow, the Court **GRANTS** Defendant Sullivan's Motion for Relief from Prejudicial Joinder and **GRANTS** Defendant Perry's Motion for Relief from Prejudicial Joinder.

I.

### A. Factual Background

On February 1, 2018, a federal grand jury returned a seven count Indictment charging Defendant William G. Weekley ("Defendant Weekley") with various child pornography and child exploitation offenses. (ECF No. 15). The federal grand jury returned a Superseding Indictment on April 5, 2018, adding Defendant Sullivan and two additional counts to the existing

Indictment. (ECF No. 27). Finally, on August 23, 2018, the federal grand jury returned a Second Superseding Indictment, this time charging Defendant Weekley, Defendant Sullivan, Defendant Perry, and Defendant Brian S. Perkins ("Defendant Perkins") with child pornography and child exploitation offenses. (ECF No. 50). The original and two superseding indictments allege the following.

In January 2018, law enforcement officers arrested Defendant Weekley after an investigation into his alleged sexual abuse of an approximately 11-year-old female ("Jane Doe"). (ECF No. 5). The investigation commenced when Defendant Weekley exchanged communications with an undercover officer regarding his sexual exploitation of Jane Doe. (ECF No. 5). After Defendant Weekley's arrest, law enforcement officers discovered cellular phone communications between Defendant Weekley and Defendant Sullivan concerning the sexual abuse of Jane Doe. (ECF No. 27). During these communications, Defendant Weekley sent Defendant Sullivan images depicting Jane Doe engaged in various sex acts. (ECF No. 27). In addition, Defendant Sullivan requested that he and Defendant Weekley meet for the purpose of sexually abusing Jane Doe together. (Gov't. Opp'n at 4, ECF No. 58). Law enforcement arrested Defendant Sullivan in early March of 2018. (*Id.* at 2).

Ongoing government investigations uncovered additional communications between Defendant Weekley and several other individuals regarding the sexual exploitation of Jane Doe. (*Id.* at 2). Defendant Perry engaged in communications with Defendant Weekley via "email, phone calls, text messages, and chats on the mobile application Wickr." (Second Superseding Indictment at 3, ECF No. 50). Besides discussing Defendant Weekley's sexual abuse of Jane Doe, Defendant Perry made plans to sexually abuse Jane Doe with Defendant Weekley. (*Id.*). The fourth defendant named in the Second Superseding Indictment, Defendant Perkins, utilized

2

email to discuss Defendant Weekley's sexual activity with Jane Doe. (*Id.*). Defendant Perkins requested sexually explicit photographs of Jane Doe and asked to meet with Jane Doe for the purpose of committing sexual abuse. (*Id.*). The remaining defendants, including Defendant Perry and Defendant Perkins, were arrested in August 2018. (Gov't. Opp'n at 2).

Under the Second Superseding Indictment, the federal grand jury charged Defendant Weekley with three counts of production of child pornography, in violation of 18. U.S.C. § 2251(a)–(e); three counts of distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); one count of attempted coercion or enticement of a minor, in violation of 18 U.S.C. § 2422(b); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). (ECF No. 50). The federal grand jury charged Defendant Sullivan with one count of advertising for child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A), (2)(A), and (e); one count of attempted coercion or enticement of a minor, in violation of 18 U.S.C. § 2422(b); and one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). (ECF No. 50).

The federal grand jury charged Defendant Perry with one count of coercion or enticement of a minor, in violation of 18 U.S.C. § 2422(b). (ECF No. 50). Finally, the grand jury charged Defendant Perkins with one count of advertising for child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A), (2)(A), and (e); one count of attempted coercion or enticement of a minor, in violation of 18 U.S.C. § 2422(b); and one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). (ECF No. 50).

Pursuant to the Criminal Justice Act, the Court appointed Stephen Wolfe to represent Defendant Sullivan. (Gov't. Opp'n at 2). The Court later granted Mr. Wolfe's motion to

withdraw and subsequently appointed Steven Nolder as Defendant Sullivan's counsel. (*Id.*). In July 2018, Defendant Sullivan hired his current counsel, Samuel Shamansky. (ECF No. 44).

The Court also appointed counsel for Defendant Perry pursuant to the Criminal Justice Act. (*Id.* at 3). Defendant Perry later hired Michael Probst as his own counsel in August 2018. (ECF No. 9). Several days later, Mr. Shamansky appeared on Defendant Perry's behalf and indicated that "he was to be Perry's newest attorney of record." (*Id.*). The Court made an initial inquiry into Mr. Shamansky's dual representation at an arraignment regarding the Second Superseding Indictment on August 31, 2018. (*Id.* at 4). Both Defendant Sullivan and Defendant Perry consented to Mr. Shamansky's continued representation. (*Id.*).

On September 18, 2018, Defendant Sullivan moved for relief from prejudicial joinder. (Def. Sullivan's Mot. at 1, ECF No. 56). Defendant Sullivan asks the Court to sever him from his co-defendants' joint trial, arguing that: 1) he was improperly joined under Federal Rule of Criminal Procedure 8(b), and 2) a joint trial would be unfairly prejudicial in violation of Federal Rule of Criminal Procedure 14. (*Id.* at 4–6). On that same day, Defendant Perry filed his own Motion for Relief from Prejudicial Joinder. (Def. Perry's Mot. at 1). Defendant Perry also requested severance from his co-defendants' joint trial, asserting similar arguments under Rule 8(b) and Rule 14. (*Id.* at 3–5). The Government filed a consolidated response in opposition to Defendant Sullivan and Defendant Perry's ("Defendants") motions on September 26, 2018. (Gov't. Opp'n). On October 5, 2018, the Court heard oral argument regarding the parties' motions. The motions are ripe for review.

## II.

The Court will first consider whether Defendants were properly joined in the instant action under Rule 8(b).

## A. Legal Standard of Rule 8(b)

Individuals may be properly joined as co-defendants under Rule 8(b) where:

**(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. of Crim. P. 8(b).

U.S. courts recognize a strong presumption in favor of conducting joint trials for defendants listed in the same indictment. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). As noted by the Supreme Court, "[j]oint trials 'conserve [government] funds, diminish inconvenience to witnesses and public authorities and avoid delays in bringing those accused of crime to trial.'" *United States v. Lane*, 474 U.S. 468, 449 (1986) (Citing *Brunton v. United States*, 391 U.S. 123, 134 (1968)). Indeed, joinder exists to "ensure that a given transaction need only be proved once." *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987).

However, where co-defendants are joined without satisfying the requirements of Rule 8(b), there is misjoinder as a matter of law. *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002). Citing *United States v. Hatcher*, 680 F.2d 438, 440 (6th Cir. 1982). In this circumstance, "the trial judge has no discretion on the question of severance. Severance in such a case is mandatory." *Hatcher*, 680 F.2d at 440–41. *See also* Charles Alan Wright, 1A Federal Practice & Procedure: Criminal § 145, at 89–90 (3d ed. 1999).

To determine whether the Rule 8(b) requirements are satisfied, courts may solely reference "allegations in the indictment." *United States v. Baltimore*, 482 Fed.Appx. 977, 980 (6th Cir. 2012). Defendants are alleged to have "participated in the same act or transaction, or in the same series of acts or transactions" if their suspected conduct is "logically interrelated" or

5

part of a "common scheme or plan." *United States v. Johnson*, 763 F.2d 773, 776 (6th Cir. 1985); *United States v. Cavale*, 688 F.2d 1098, 1106 (7th Cir. 1982). In addition, the Sixth Circuit has indicated the existence of "overlapping proof" suggests that joinder may be proper under Rule 8(b). *United States v. Swift*, 809 F.2d 773, 776 (6th Cir. 1985).

## B. Analysis of Defendants' Joinder Under Rule 8(b)

Defendants argue that joinder is improper under Rule 8(b) because they did not engage in the same act or transaction, or series of acts or transactions. Relying on *United States v. Whitehead*, 539 F.2d 1023 (4th Cir. 1976), Defendants cite the following language:

> We hold that two defendants, who engage separately and without concert of purpose in independent crimes of the same nature, and who therefore may not be consolidated in an indictment under Rule 8(b), cannot be consolidated for trial under Rule 13, despite the fact that said independent crimes each involve a common third party.
>
> Where the only nexus between two defendants joined for trial is their participation in similar offenses, on different dates, with common third defendant, the "same transaction" or "series of transactions" test of Rule 8(b) is not satisfied and joinder is impermissible.

*Whitehead*, 539 F.2d at 1026.

Analogizing *Whitehead* to the present case, Defendants contend they are accused of committing independent crimes which involved Defendant Weekley as a common third party. Specifically, Defendant Sullivan points out the Government does not claim he engaged in illegal conduct with Defendants Perry or Perkins. (Def. Sullivan's Mot. at 5). Moreover, although Defendant Sullivan was named with Defendant Weekley in Count Eleven of the Second Superseding Indictment, he was not named with Defendants Perry or Perkins in a single count. (*Id.*).

Defendant Perry asserts similar arguments. Again, the Government does not claim that Defendant Perry committed criminal offenses with Defendants Sullivan or Perkins. (Def. Perry's Mot. at 5). There is no indication that Defendant Perry knew Defendants Sullivan or Perkins.

6

(*Id.*). Furthermore, Defendant Perry was not named in a single count with Defendants Weekley, Sullivan, or Perkins. (*Id.*). In sum, Defendants contend they had no relationship with each other or with Defendant Perkins, rendering a joint trial improper under Rule 8(b).

Defendants also cite *United States v. Tsanges*, 582 F. Supp. 237, 238 (S.D. Ohio 1984), in which this Court held that the Government may not try multiple defendants together "simply because their alleged offenses are similar in nature." (Def. Sullivan's Mot. at 3–4; Def. Perry's Mot. at 4). Here, Defendants argue they are charged with committing similar, but not identical acts. While both Defendants are accused of offenses related to child exploitation, they were indicted on separate counts. Defendant Sullivan was charged with three counts, including: 1) advertisement of child pornography, 2) attempted coercion or enticement of a minor, and 3) receipt of child pornography. (ECF No. 50). In contrast, Defendant Perry was only charged with one count of coercion or enticement of a minor. (ECF No. 50). Despite the similarities in the charges, Defendants contend any factual overlap was a product of Defendant Weekley's "hub and spoke" criminal enterprise.

Finally, Defendants point to *Hatcher*, 680 F.2d at 442, where the Sixth Circuit found joinder improper as a matter of law. In *Hatcher*, Defendants James Hatcher and Haralabos Manetas were jointly indicted for federal narcotics crimes. *Id.* at 440. While both defendants were charged with heroin-related offenses, only Hatcher was charged with three counts of distribution of cocaine. *Id.* The Government asserted that Manetas was Hatcher's source of heroin in the indictment. *Id.* at 442. However, the Government alleged no connection between Hatcher's cocaine charges and Manetas. *Id.* Accordingly, the Court held the defendants' alleged acts were not logically interrelated under Rule 8(b), rendering joinder improper. *Id.* at 441.

7

Applying *Hatcher* to the instant action, Defendants argue the conduct attributed to Defendant Sullivan in the Second Superseding Indictment did not involve Defendants Perry or Perkins. (Def. Sullivan's Mot. at 5). Similarly, Defendants contend the conduct attributed to Defendant Perry in the Second Superseding Indictment did not involve Defendants Sullivan, Perry, or Perkins. (Def. Perry's Mot. at 5). Because the Government alleged no connection between Defendants' acts in the Second Superseding Indictment, Defendants assert that joinder is impermissible as a matter of law. (Def. Sullivan's Mot. at 6; Def. Perry's Mot. at 5).

The Government responds, citing *United States v. Beverly*, 369 F.3d 5198 (6th Cir. 2004). There, the indictment alleged a string of seven bank robberies committed by different groupings of co-defendants. (Gov't. Opp'n at 7). Only a few co-defendants participated in each robbery. *Beverly*, 369 F.3d at 523–526. However, the Sixth Circuit noted the robberies "were conducted over a relatively short period of time and performed using a similar pattern of behavior." *Id.* at 533. Accordingly, the court held that each bank robbery "can easily be viewed as part of one ongoing set of transactions, linked together [by two common actors]." *Id.* Applying *Beverly* to the present case, the Government asserts that Defendants' alleged sexual exploitation of the same minor female constitutes a series of transactions. (Gov't. Opp'n at 7–9). Moreover, like the two common actors in each bank robbery in *Beverly*, Defendant Weekley is a common actor in this case. (*Id.* at 8).

The Government also relies on *Johnson*, 763 F.2d at 773–774, where a single defendant was charged with one count of mail fraud and her co-defendants were charged with four counts related to the transportation of stolen vehicles. Despite the differences between mail fraud and the other counts, the *Johnson* court determined the defendants' acts were logically interrelated under Rule 8(b). *Id.* at 776. The court noted a single "kingpin" made the co-defendants' crimes

8

possible by obtaining fraudulent car titles to support each actor's illegal activities. *Id.* Equating the *Johnson* "kingpin" with Defendant Weekley, the Government contends Defendants committed logically interrelated acts by abusing a single victim through Defendant Weekley.

Moreover, the Government points out that the interrelated nature of Defendants' crimes is demonstrated by the "overlapping evidence necessary to prove them." (Gov't. Opp'n at 8). The Government cites *United States v. Reed*, 647 F.2d 678, 689 (6th Cir. 1981), where the Sixth Circuit denied a severance motion because "even had the defendants been granted separate trials, the prosecution could and would largely have introduced much if not all the same testimony against each defendant." According to the Government:

> Weekley's sexual abuse of Jane Doe will be the foundation of all of the charges in the Second Superseding Indictment, as it is that sexual abuse that led to the production of the images that were distributed to and received by Sullivan, and that led to Perry's participation in the sexual abuse of Jane Doe.

(Gov't. Opp'n at 9.)

Finally, the Government notes that in *Whitehead*, 539 F.2d 1023, the defendants committed independent crimes, did not associate with each other, and did not rely on a common actor to carry out drug transactions. In contrast, the Government asserts that Defendants "acted with a commonality of purpose—the sexual exploitation of Jane Doe—and utilized the same modality to effect those crimes—communications with Weekley, the center of a hub-and-spoke conspiracy." (*Id.* at 10).

Initially, the Court notes there is relatively little controlling case law in this area. Although the Government's reliance on *Beverly* and *Johnson* is well taken, the Court recognizes significant differences between those cases and the case *sub judice*. First, the *Beverly* co-defendants were charged with conspiracy. *Beverly*, 369 F.3d 5198. While Rule 8(b) does not require the defendants be charged with the same offense, a mutual conspiracy count is indicative

9

of a coordinated series of acts or transactions. Fed. R. of Crim. P. 8(b). In fact, "an allegation of conspiracy creates a prima facie presumption of proper joinder." *Tsanges*, 582 F. Supp. at 239. Here, there is no allegation of conspiracy. Defendants were only charged with individual crimes, or crimes committed with Defendant Weekley.

Moreover, *Beverly* was not a hub-and-spoke criminal operation. Although two common defendants participated in all bank robberies, group interactions were not limited to independent communications between one participant and one lead actor. Instead, groupings of co-defendants knew and interacted with each other, tying themselves together in one common scheme to rob banks. For example, three co-defendants agreed to rob National City Bank after drinking together. *Beverly*, 369 F.3d at 524. The same three individuals plus a fourth co-defendant later met at a participant's apartment to plan the Security National Bank Robbery together, preparing "disguises, including masks and bandannas." *Id.* at 525. Several participants even identified each other in surveillance photos at trial, confirming their previous "membership" in the larger bank robbery conspiracy. *Id.*

Unlike the co-defendants in *Beverly*, there is no indication that Defendants Sullivan, Perry, or Perkins had any contact with each other. The Government asserts that "[t]hrough their Craigslist activities, the defendants made online contact with each other and others who shared, or whom they believed would share, their sexual interest in minors, incest, and child pornography." (ECF No. 50). Yet during oral argument the Government represented that Defendants sexually exploited Jane Doe solely through their communications with Defendant Weekley. Also during oral argument Defendants suggested they were never even aware of one another or Defendant Perkins.

Had Defendants participated in the same chatroom, or even the same social media group, the Government could establish a clear association between them. Here, there is allegedly no such link. Individuals with similar Craigslist activities are not necessarily acquaintances, much less mutual participants in a series of acts or transactions. Complete strangers can easily utilize the same online platform to post or view classified advertisements. In addition, individuals with a criminal purpose often conceal their identities online by utilizing anonymous usernames. Since the Government's Second Superseding Indictment does not provide any additional facts regarding Defendants' alleged Craigslist activities, the Court assumes any online contact between Defendants was incidental at most.

*Johnson* provides more analogous facts to the present case. Although there was a conspiracy count in *Johnson*, not all defendants were charged with conspiracy. *Johnson*, 763 F.2d at 773. In fact, some of the offenses in *Johnson* were outwardly unrelated to others (i.e., mail fraud and stolen vehicles). *Id.* Moreover, the *Johnson* criminal enterprise roughly reflects a hub-and-spoke structure. The "kingpin," Samuel Hancock, orchestrated the operation by passing false car titles to individuals in possession of stolen vehicles. *Id.* at 774. Each defendant knew and interacted with Hancock personally. For example, Rosemary Johnson ("Ms. Johnson"), the defendant charged with a single count of mail fraud, knew Hancock for at least eight years prior to her marriage and subsequent criminal activity. *Id.* at 776. Without Hancock's direction and supply of fraudulent titles, the criminal enterprise would have fallen apart. *Id.*

Yet *Johnson* is also distinguishable from the case *sub judice*. Despite their largely independent interactions with Hancock, the *Johnson* co-defendants were not strangers. Not only did Ms. Johnson occasionally receive fraudulent titles from Hancock's other criminal "associates," she was also married to one of her co-defendants. *Id.* According to Count Eleven

11

of the Second Superseding Indictment, Defendant Sullivan exclusively communicated with Defendant Weekley to sexually exploit Jane Doe. (ECF No. 50). The remaining counts against Defendants, Counts Seven, Twelve, and Thirteen, do not allege any communications between co-defendants. (*Id.*). Because there was no interaction or planning between Defendants, they engaged in separate criminal acts.

The fact that Defendants' alleged offenses are similar is not determinative. Indeed, Defendants were both indicted for offenses relating to the sexual exploitation of Jane Doe. Specifically, Defendant Sullivan was charged with attempted coercion or enticement of a minor, while Defendant Perry was charged with coercion or enticement of a minor. (ECF No. 50). Yet Defendants accurately point out that committing substantially similar offenses "does not demonstrate that those offenses arose out of a series of acts or transactions." *Tsanges*, 582 F. Supp. at 239 (Citing *United States v. Bledsoe*, 674 F.2d 647, 656–657 (8th Cir. 1982)). The Government must assert a "single scheme encompassing all defendants and all offenses charged." *Tsanges*, 582 F. Supp. at 240.

The Court finds *United States v. Ledbetter*, 137 F.3d 1042 (S.D. Ohio 2015) instructive on this point. In *Ledbetter*, the defendants were indicted on charges including Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy, murder in aid of racketeering, and various other firearms and drug offenses. *Id.* at 1042. All alleged violations were connected to the defendants' alleged involvement in the Short North Posse, a criminal gang. *Id.* at 1046. Seven defendants moved for severance, arguing that joinder was improper under Rule 8(b). *Id.* at 1050. This Court held that joinder was proper because all alleged activity flowed "from the same overarching RICO conspiracy." *Id.* Even though six defendants were not charged with RICO conspiracy, they were charged with murder in aid of racketeering. *Id.* at 1051. Since the

12

murders were committed for the purpose of gaining entrance or better standing in the RICO conspiracy, the Court found the defendants' acts were logically interrelated as one series of transactions. *Id.* at 1052.

The present case is distinguishable from *Ledbetter*. True, Defendants' alleged offenses involve a common instigator and a common victim. In addition, the Defendants were charged with similar counts. However, Defendants did not sexually exploit Jane Doe for the purpose of gaining membership or standing in a larger criminal enterprise. In other words, the commission of one crime by Defendant Sullivan did not further the commission of another crime by Defendant Perry. Each actor (besides Defendant Weekley) operated independently from the others, engaging in criminal activity for his own personal gain.

*Whitehead*, albeit a Fourth Circuit case, is illustrative of the issue before the Court. Defendants Harold Jackson and William Meredith sold cocaine to an undercover federal agent. *Whitehead*, 539 F.2d at 1024. Thirteen days later, Defendants Raymond Whitehead and Harold Jackson sold cocaine to the same federal agent. *Id.* Although Whitehead, Jackson, and Meredith lived in the same apartment building, there was no indication that Whitehead and Meredith knew each other. *Id.* Despite the fact the two transactions involved the same "buyer" and one common actor, the court concluded Rule 8(b) joinder was improper. *Id.* at 1026. Because there was no obvious scheme between Whitehead and Meredith—and the sales occurred on different dates—the acts were not logically interrelated enough to be a series of transactions. *Id.*

Here, Defendants' alleged crimes occurred on different days with the assistance of a common third actor, Defendant Weekley. There is no evidence in the Second Superseding Indictment that Defendants knew or interacted with each other. (ECF No. 50). Any potential contact via Craigslist is considerably more attenuated than Whitehead and Meredith's

13

presumably day-to-day sightings around their shared apartment building. Moreover, both *Whitehead* and the present case involve a common third party. In *Whitehead*, a single undercover agent received cocaine in each transaction. *Whitehead*, 539 F.2d at 1024. Here, Defendants' offenses involved the sexual exploitation of the same victim, Jane Doe.

Finally, the Government's argument regarding "overlapping evidence" is not well taken. Admittedly, evidence of Defendant Weekley's sexual abuse of Jane Doe would be a common element of Defendants' separate trials. However, the federal grand jury indicted Defendants for different crimes. In addition, law enforcement gathered evidence unique to Defendants' individual activities for the sole purpose of supporting these different counts. Evidence of Defendant Sullivan's alleged crimes would not be instructive in determining the guilt or innocence of Defendant Perry, or vice versa.

Accordingly, Defendants' alleged actions were not logically interrelated as a series of acts or transactions. The Court holds that joinder was improper under Rule 8(b).

## III.

The parties also assert Rule 14 arguments in their briefs. Under Rule 14, the Court may provide relief from prejudicial misjoinder where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. However, "[q]uestions of prejudice are properly raised under Rule 14 only if the joinder of multiple defendants is proper under Rule 8(b)," *Hatcher*, 680 F.2d at 440–441. *See also United States v. Lloyd*, 10 F.3d 1197, 1215 (6th Cir. 1993) ("Rule 14 comes into play only if joinder was initially proper under Rule 8 but a joint trial would prejudice one or more defendants.").

14

Consequently, the Court declines to conduct a Rule 14 balancing test. As joinder was improper under Rule 8(b), the Court orders severance as a matter of law.

**IV.**

For the reasons stated above, the Court **GRANTS** Defendant Sullivan's Motion for Relief from Prejudicial Joinder (ECF No. 56), and **GRANTS** Defendant Perry's Motion for Relief from Prejudicial Joinder (ECF No. 57).

**IT IS SO ORDERED.**

10-19-2018
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**